<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| G&C FAB-CON, LLC,<br><br>Plaintiff,<br><br>v.<br><br>M&S CIVIL CONSULTANTS, INC.,<br><br>Defendant. | Case No. 3:20-cv-08425 (BRM) (DEA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant M&S Civil Consultants, Inc.'s ("Defendant") Motion to Dismiss Plaintiff G&C Fab-Con, LLC's ("Plaintiff") Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 3.) Defendant moves in the alternative to transfer this action to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1404(a). (*Id.*) Plaintiff opposes the Motion (ECF No. 5), and Defendant filed a Reply. (ECF No. 6). Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, Defendant's Motion to Transfer is **GRANTED,** its Motion to Dismiss is **DENIED AS MOOT**, and this action will be transferred to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1406(a).[1]

---

[1] Defendant does not formally move for transfer under § 1406(a), although it introduces arguments in favor of § 1406(a) transfer. (ECF No. 3-1 at 12–16.) When courts in this district transfer under

**I.     BACKGROUND**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "*document integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Plaintiff is a New Jersey limited liability company registered to do business in New Jersey with a principal place of business at 5 Foster Lane, Building A, Flemington, New Jersey 08822. (ECF No. 1-1 ¶ 1.) Defendant is a Colorado corporation with a principal place of business at 20 Boulder Crescent, Suite 110,[2] Colorado Springs, Colorado 80903. (*Id.* ¶ 2.) Plaintiff was retained by the United States Department of Veterans Affairs to serve as the prime contractor for a project that involved the construction of a new cemetery complex to accommodate visitation and burial services for United States veterans. (*Id.* ¶ 3.) The project is called the Pike's Peak National Cemetery Project (the "Project"). (*Id.*) On October 17, 2017, Plaintiff entered into a subcontract with Defendant. (*Id.* ¶ 4.) Under this subcontract, Defendant agreed to provide civil consultant services, labor, and materials to complete all civil survey work on the Project. (*Id.*) Plaintiffs allege Defendant "had an obligation to perform its work on the Project in a good and workmanlike

---

§ 1406(a), the more common practice is to grant the pending motion to transfer, regardless of whether it is brought under § 1404(a) or § 1406(a). *See, e.g.*, *Seifert v. SF&P Advisors, Inc.*, Civ. A. No. 19-12770, 2019 WL 2754603, at *4 (D.N.J. July 2, 2019); *Schwartz v. Planalytics, Inc.*, Civ. A. No. 116-03933, 2017 WL 2812878, at *4 (D.N.J. June 29, 2017); *Spiniello Companies v. Moynier*, Civ. A. No. 2:13-5145, 2014 WL 7205349, at *6 (D.N.J. Dec. 17, 2014).

[2] The Notice of Removal states Defendant's address as 102 E. Pikes Peak Avenue, Suite 500, Colorado Springs, Colorado 80903. (ECF No. 1 ¶ 8.)

manner and in accordance with the standard of care for professional civil consultants/surveyors." (*Id.* ¶ 5.) Based on Defendant's representations and the terms of the contract, Plaintiff reasonably expected that Plaintiff's work would be performed in accordance with the standard of professional civil consultants and surveyors. (*Id.* ¶ 6.) However, Plaintiff alleges "[a]fter initiating its work pursuant to the Contract, the quality of [Defendant's] work was determined to be contrary to the requirements set forth therein and inconsistent with acceptable industry standards." (*Id.* ¶ 7.) Plaintiff claims Defendant made a series of surveying errors that resulted in (1) a lower slab height in the Administration Building that was required by the Contract, (2) underground pipe and drainage errors, and (3) over-excavation of earth related to both of those errors, which led to unanticipated earth moving activity. (*Id.* ¶ 8.) Plaintiff also alleges Defendant failed to complete the agreed upon work set forth in the Contract, and that Defendant "opt[ed] to abandon the Project in or around July of 2019 without cause." (*Id.* ¶ 9.) Plaintiff "was forced to incur substantial costs to correct the inaccurate surveying work performed by [Defendant] and to complete [Defendant's] scope of work." (*Id.* ¶ 10.) Plaintiff claims "the costs incurred by [Plaintiff] to correct and complete [Defendant's] scope of work on the Project significantly exceeds any amounts due to [Defendant] for work performed pursuant to the Contract." (*Id.* ¶ 11.) Plaintiff alleges "[a]s a direct and proximate result of the material breaches of [Defendant] . . . [Plaintiff] has suffered damages presently estimated to be in excess of $200,000, after accounting for any contract balance owed to [Defendant]." (*Id.* ¶ 12.) Lastly, Plaintiff states "[a]ll conditions precedent to [Plaintiff's] right to recover have been performed or have otherwise occurred." (*Id.* ¶ 13.)

On May 15, 2020, Plaintiff commenced this action in the Superior Court of New Jersey, Law Division, Hunterdon County under Docket No. HNT-L-183-20. (ECF No. 1 ¶ 1.) Defendant removed the action to this Court on July 7, 2020. (*Id.*) Plaintiff's Complaint alleges causes of

action for breach of contract and unjust enrichment. (ECF No. 1-2 ¶¶ 14–23.) On July 14, 2020, Defendant filed a Motion to Dismiss for lack of personal jurisdiction, or, in the alternative, to transfer venue under 28 U.S.C. § 1404. (ECF No. 3.) On August 3, 2020, Plaintiff filed an Opposition. (ECF No. 5.) And on August 10, 2020, Defendant filed its Reply. (ECF No. 6.)

## II.  LEGAL STANDARD

A plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 86–87 (3d Cir. 2015) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368 (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). Pursuant to Federal Rule of Civil Procedure 4(e), a district court may exercise personal jurisdiction according to the law of the state where it sits. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 (3d Cir. 2004) (citing N.J. Court Rule 4:4-4(c)). In other words, this Court's jurisdiction is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice,' inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank*, 954 F.2d at 145 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales*, 384 F.3d at 96 (citing *Carteret Sav. Bank*, 954 F.2d at 149).

The Supreme Court has defined two categories of personal jurisdiction: specific jurisdiction and general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (citing *Int'l Shoe Co.*, 326 U.S. at 317); *see also Metcalfe*, 566 F.3d at 334 ("Minimum contacts can be

analyzed in the context of general jurisdiction or specific jurisdiction."). Specific jurisdiction exists when the defendant's activities in the forum state: (1) were "continuous and systematic" and (2) gave rise to the plaintiff's claims. *Daimler*, 571 U.S. at 119. General jurisdiction requires only continuous and systematic contacts, and exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 318).

"Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the 'plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (citing *Pinker*, 292 F.3d at 368.) The defendant must have "'purposefully directed' his activities at residents of the forum and the litigation [must] result[] from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Metcalfe*, 566 F.3d at 334. Further, the Due Process Clause of the Fifth Amendment requires that a "defendant has constitutionally sufficient 'minimum contacts' with the forum" and that "the court's jurisdiction comports with traditional notions of fair play and substantial justice." *Pinker*, 292 F.3d at 369 (citing *Burger King Corp.*, 471 U.S. at 474 and *Int'l Shoe Co.*, 326 U.S. at 316).

While the Supreme Court has not ruled out the possibility an individual could be subject to general jurisdiction because of "continuous and systematic contacts" with the forum, the Court has applied general jurisdiction only to corporate defendants. *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; *for a corporation*, it is an equivalent place, *one in which the corporation is fairly regarded as at home*.") (emphasis added). "It may be that whatever

special rule exists permitting continuous and systematic contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990).

### III. DECISION

Defendant contends this Court should grant its Motion to Dismiss because the Court lacks personal jurisdiction over Defendant. (*See* ECF No. 3-1.) Alternatively, Defendant contends the Court should transfer this action to the District of Colorado under 28 U.S.C. § 1404(a). (*See id.*) This Court addresses each argument in turn.

#### A. Specific Personal Jurisdiction[3]

Because this Court has not held an evidentiary hearing, Plaintiff only bears the burden of proving a prima facie case of personal jurisdiction over Defendant. *See Metcalfe*, 566 F.3d at 330. To establish a prima facie case of specific personal jurisdiction, Plaintiff must show (1) Defendant "purposefully directed [its] activities at [New Jersey];" (2) Plaintiff's claims "arise out of or relate to at least one of those activities;" and (3) "the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *See O'Conner v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal quotations and citations omitted). "[P]laintiff may not rely on bare pleadings alone" in such a showing, "but must come forward with affidavits and other competent evidence establishing with reasonable particularity the nature and extent of [D]efendant's contacts with [New Jersey]." *See Sadek v. Horovitz*, Civ. A. No. 10-2187, 2013 WL 12149254, at *6 (D.N.J. Mar. 28, 2013) (citing *Metcalfe*, 566 F.3d at 330).

Defendant argues that Plaintiff has not made this requisite showing. (ECF No. 3-1 at 4–8.)

---

[3] Plaintiff does not argue that this Court has general personal jurisdiction over Defendant. (*See generally* ECF No. 5.) Because Plaintiff only argues this Court has specific personal jurisdiction over Defendbant, the Court will not address general personal jurisdiction.

It argues it is a Colorado corporation with "no connection to New Jersey." (*Id.* at 6.) Defendant notes it does not have an office, property, or "Certificate of Authorization to provide engineering and/or surveying services in New Jersey." (*Id.*) And while it contracted with a New Jersey limited liability company, the subcontract at issue here "was for [Defendant] to perform work in the State of Colorado." (*Id.*) Additionally, Plaintiff solicited the subcontract in Colorado and Defendant's President, Virgil Sanchez, "is not licensed in New Jersey, and has no connection to New Jersey." (*Id.*) Because of these facts, Defendant argues "in no meaningful way did [it] purposefully avail itself of the privilege of conducting business in the State of New Jersey." (*Id.*) Defendant also contends the "relatedness requirement" is not satisfied because "there are no other contract related activities that were directed at New Jersey" and because "there were no contacts initiated by [Defendant] in New Jersey which were instrumental in the solicitation or formation of the contract between Plaintiff and Defendant or any claimed breach of the same." (*Id.* at 8.) Lastly, pointing toward Plaintiff's failure to establish the first two requirements of specific personal jurisdiction, Defendant argues exercising personal jurisdiction would "run counter to 'traditional notions of fair play and substantial justice.'" (*Id.*)

Plaintiff argues it is subject to specific personal jurisdiction in this Court. (ECF No. 5 at 2–7.) Plaintiff contends Defendant "purposefully availed itself of conducting activities" within New Jersey because Defendant "entered into a construction subcontract with [Plaintiff], a New Jersey limited liability company." (*Id.* at 3.) Plaintiff claims Defendant "was in regular, consistent contact with [Plaintiff's] New Jersey office" and states "all requests for information, correspondence, processing of subcontractor change orders, pay application, processing of payments and obtaining waivers and releases were all conducted" through Plaintiff's New Jersey office. (*Id.* at 4.) Plaintiff also points to "extensive communications between [Plaintiff] and [Defendant] pertaining to

[Defendant's] deficiencies and . . . remedial work" and notes Defendant's "deficient and incomplete performance caused [Plaintiff's] headquarters to be more involved in the Project than any other project in [Plaintiff's] history." (*Id.* at 4–5.) Based on these facts, Plaintiff argues Defendant's "deficient and incomplete performance effectively forced [Plaintiff] to reach into New Jersey in order to target the personnel capable of developing and implementing a resolution reinforcing the fact that [Defendant] had sufficient minimum contacts with New Jersey for the exercise of specific jurisdiction." (*Id.* at 5.) Plaintiff argues its claims satisfy the "relatedness requirement" because Defendant's "purposeful contacts with [Plaintiff's] New Jersey personnel were a direct result of the problems created by [Defendant's] surveying errors." (*Id.* at 6.) And Plaintiff contends the exercise of jurisdiction comports with traditional notions of fair play and substantial justice because Defendant: (1) had sufficient minimum contacts aimed at New Jersey; (2) [Plaintiff's] Complaint arises out of those purposeful contacts; and (3) [Defendant] failed to assert otherwise. (*Id.* at 7.)

Plaintiff's claims for breach of contract and unjust enrichment relate to the subcontract between Plaintiff and Defendant. *See Team First Consulting, LLC v. Hangliter*, Civ. A. No. 07-311, 2007 WL 1302440, at *4 (D.N.J. Apr. 27, 2007). "The fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident." *Newman v. N. Carolina Ins. Underwriting Ass'n / N. Carolina Joint Underwriting Ass'n*, Civ. A. No. 20-1464, 2020 WL 6689756, at *4 (D.N.J. Nov. 13, 2020) (citing *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Therefore, "[i]n determining jurisdiction over a breach of contract claim, [courts] must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d

Cir. 2001). The Third Circuit has stated "informational communications in furtherance of a contract between a resident and nonresident does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the nonresident defendant." *Id.* (citing *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993)). However, the Third Circuit has also "expressly acknowledged that in many instances, personal jurisdiction can arise primarily from a nonresident defendant's contact with a forum resident." *Id.*

In *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, the Third Circuit found defendant, a California corporation, did not possess minimum contacts with the forum state, Pennsylvania, by mailing plaintiff, a Pennsylvania corporation, a signed contract, making telephone calls to Pennsylvania to negotiate a second contract, and mailing other correspondence to Pennsylvania. 75 F.3d 147, 149–52 (3d Cir. 1996). Defendant did not solicit the contract at issue, and none of defendant's personnel ever visited the forum state. *Id.* at 151. Instead, plaintiff solicited defendant to obtain the contract through telephone calls and visits to California. *Id.* Defendant did not ship any product to plaintiff in the forum state. *Id.* Defendant also made all payments for goods under the contract to plaintiff's California office, not its Pennsylvania office. *Id.* Ultimately, the court noted "[t]he only contacts that [defendant] had with Pennsylvania consisted of some telephone calls and letters written to [plaintiff] in Pennsylvania." *Id.* at 152.

However, in *Remick v. Manfredy*, the Third Circuit found a nonresident defendant did possess minimum contacts with the forum state based on communications related to a contract claim. 238 F.3d at 256. There, the nonresident defendant sought out the resident plaintiff by "placing a call to [plaintiff's] associate" in the forum state, Pennsylvania. *Id.* This call resulted in an attorney-client relationship and a fee arrangement, which was governed by the forum state's Rules of Professional Conduct. *Id.* The court stated this "suggest[ed] that [defendant] was

receiving the benefit of Pennsylvania law under the agreement." *Id.* At least one payment was sent by defendant to plaintiff in the forum state, and most of the services were conducted in the forum state. *Id.* Based on these facts, the court concluded "the District Court has personal jurisdiction over [defendant] for [plaintiff's] breach of contract claim." *Id.* at 257.

The Court concludes Plaintiff has not met its burden of establishing "a prima facie case of personal jurisdiction" even when taking "its allegations as true and all factual disputes drawn in its favor." *Ragner Tech. Corp. v. Berardi*, 287 F. Supp. 3d 541, 550 (D.N.J. 2018) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). The record[4] demonstrates that Defendant did not have sufficient minimum contacts with New Jersey, the forum state. Indeed, the subcontract between Plaintiff and Defendant was governed by Colorado law. (*See* ECF No. 1-1, Ex. A. at 7 (G&C Subcontract with M&S).) Defendant did not have "a Certificate of Authorization to provide engineering and/or surveying services in New Jersey and has never provided such services in New Jersey." (ECF No. 3-2 ¶ 5 (Certification of Virgil Sanchez, President of Defendant).) Defendant "does not maintain, nor has it ever maintained: facilities, offices, employees, registered agents, real property, telephone listings or bank accounts" in New Jersey. (*Id.* ¶ 3.) Defendant did not solicit or initiate business in New Jersey. (*Id.* ¶ 6.) Instead, Plaintiff solicited "the lone subcontract between [Plaintiff] and [Defendant]" in Colorado, not New Jersey. (*Id.* ¶ 9.) The subcontract was for Defendant to "perform work in the State of Colorado" and "[t]he performance of contractual duties by [Defendant] solely occurred within Colorado, not New Jersey." (*Id.*) Additionally, Defendant "did not contractually agree that the law of New Jersey would govern disputes with Plaintiff." (*Id.* ¶ 7.) Because the record indicates Defendant did not

---

[4] The Court at this stage of the litigation must "assum[e] the sworn allegations that appear in . . . [Plaintiff's] affidavit and the other documentary evidence on record are true and constru[e] factual disputes in [his] favor." *Metcalfe*, 566 F.3d at 331.

solicit the subcontract, never visited New Jersey, performed all of the work under the subcontract in Colorado, which was governed by Colorado law, this case is more like *Vetrotex* than *Remick*. Accordingly, exercising personal jurisdiction over Defendant is improper.

Plaintiff does not dispute Defendant's connections to Colorado. Instead, Plaintiff argues Defendant purposefully availed itself of the privilege of conducting activities in New Jersey by remaining in "regular, consistent contact with [Plaintiff's] New Jersey office." (ECF No. 5 at 3–4.) Plaintiff argues this regular contact came from the fact that "all requests for information, correspondence, processing of subcontractor change orders, pay applications, processing of payments and obtaining waivers and releases were all conducted through [Plaintiff's] New Jersey office." (*Id.* at 4.) Furthermore, Plaintiff notes "there were extensive communications between [Plaintiff] and [Defendant] pertaining to [Defendant's] deficiencies and the remedial work" and specifies it had to "issue multiple change orders to [Defendant] and other subcontractors that addressed [Defendant's] deficient work." (*Id.*) Plaintiff provides several other communications in the record. (*See* ECF No. 5-2 (Certification of Richard Creter, Vice President of Plaintiff).) While Defendant's alleged deficient surveying work was the subject of these other communications, these communications occurred between Plaintiff and some other party, not Defendant. For example, Plaintiff highlights "regular communication with the Department of Veteran's Affairs" concerning Defendant's performance during the contract. (*Id.* ¶ 4.) Plaintiff also notes certain remedial efforts related to Defendant's alleged breach, such as "submitting Requests for Information" to address the impact of Defendant's surveying deficiencies, "transmitting shop drawings or submittals to engineering personnel to address [Defendant's] errors and deficiencies," and "maintaining additional contact with additional subcontractors, [Plaintiff's] employees, and the Department of Veterans Affairs to address corrections to [Defendant's] deficient work." (*Id.* ¶ 6.) In sum, most

of the communications provided by Plaintiff in the record simply describe the impact of Defendant's alleged breach on Plaintiff's headquarters in New Jersey, rather than demonstrate Defendant purposefully availed itself of the privileges of New Jersey.

The record indicates Plaintiff processed pay applications and payments. (*Id.* ¶ 2.) Defendant argues these activities are "unilateral activity" by Plaintiff in New Jersey. (ECF No. 6 at 5–6.) The court in *Vetrotex*, after finding no minimum contacts between defendant and the forum state, distinguished the case from others "where the defendant sent . . . payments to the plaintiff in the forum state." 75 F.3d at 152 (citing *North Penn Gas v. Corning Natural Gas*, 897 F.2d 687, 690–91 (3d Cir.1990)). However, in *North Penn Gas*, the fact that a nonresident defendant made payments to the plaintiff in the forum was only one of several factors the court pointed to in finding personal jurisdiction. *Id.* ("It follows that [defendant] purposefully established minimum contacts with [the forum state] through the services received under the Storage Agreement with [plaintiff], the 30 year relationship with [plaintiff], its voluntary participation in the continuation of that relationship . . . , and the transmittal of payments into [the forum state]"). Therefore, even if the record clearly indicated that Plaintiff was processing pay applications or payments *from Defendant*, this is only one factor to consider among the totality of the circumstances. *See Remick*, 238 F.3d at 256.

Because the Court has found Plaintiff has not carried its burden of showing minimum contacts between Defendant and New Jersey, this Court need not decide the two additional requirements under this specific personal jurisdiction analysis and may proceed to Defendant's alternative motion. *Sandy Lane Hotel Co.*, 496 F.3d at 317; *Adelman v. Peter*, Civ. A. No. 06-6007, 2007 WL 4557651, at *6 (D.N.J. Dec. 21, 2007) (ending inquiry after finding plaintiffs did not demonstrate minimum contacts between defendants and the forum state, New Jersey).

**B. Transfer Under 28 U.S.C. § 1404(a)[5]**

The Court must also address Defendant's alterative motion to transfer this case to the District of Colorado. "Under 28 U.S.C. §§ 1404(a) and 1406(a), the Court may dismiss or transfer an action even if it lacks personal jurisdiction over the defendants." *MIIX Ins. Co. v. Associated Women's Health Specialists, P.C.*, Civ. A. No. 07-1635, 2007 WL 4163999, at *4 (D.N.J. Nov. 19, 2007) (citing *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964)). "Section 1406(a) comes into play where plaintiffs file suit in an improper forum." *Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995)). As the Supreme Court has stated, "[t]he language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). However, "[d]ismissal is considered to be a harsh remedy . . . and transfer of venue to another district court in which the action could originally have been brought, is the preferred remedy." *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 525 (D.N.J. 2013) (citation omitted). "Courts typically use § 1406(a) as an equitable remedy so that a plaintiff can avoid having his case dismissed altogether due to jurisdictional problems." *Adelman*, 2007 WL 4557651, at *7 (D.N.J. Dec. 21, 2007) (citing *Carteret Sav. Bank, FA v. Shushan*, 919 F.2d 225, 231–32 (3d Cir. 1990)).

An action may have been originally brought in another district if (1) venue is proper in the transferee district and (2) the transferee district can exercise jurisdiction over all defendants. *Shutte*

---

[5] While Defendant only moves to transfer venue under 28 U.S.C. § 1404(a) (*see* ECF No. 3), it introduces arguments in favor of transfer under 28 U.S.C. § 1406(a) if the Court chooses to dismiss Plaintiff's Complaint under Rule 12(b)(2). (ECF No. 3-1 at 12–16.) Because a district court can *sua sponte* transfer a case to a court with proper jurisdiction under § 1406(a), the Court will consider transfer under that section. *Decker v. Dyson*, 165 F. App'x 951, 954 n.3 (3d Cir. 2006).

*v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). Venue is appropriate in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Defendant is a Colorado corporation, and the dispute involves a subcontract that concerned work performed in Colorado. The subcontract was governed by Colorado law. Any breaches from Defendant's alleged failure to properly survey land occurred in Colorado. Therefore, venue would be appropriate in the District of Colorado. Accordingly, the Court finds it appropriate to transfer this matter to the District of Colorado pursuant to 28 U.S.C. § 1406(a).

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Transfer pursuant to § 1404(a) is **GRANTED** and its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) is **DENIED AS MOOT**. This matter is transferred to the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1406(a). An appropriate order follows.

**Date: January 27, 2021**              */s/ Brian R. Martinotti*
                                                                **HON. BRIAN R. MARTINOTTI**
                                                                **UNITED STATES DISTRICT JUDGE**